# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

No. 12-0477

FILED

November 13, 2013

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**THERESA L. WEIMER,**
**Plaintiff Below, Petitioner**

**V.**

**THOMAS SANDERS, individually**
**and in his official capacity; C.C. LESTER,**
**in his official capacity; and POCAHONTAS**
**COUNTY BOARD OF EDUCATION,**
**Defendants Below, Respondents**

Appeal from the Circuit Court of Pocahontas County
Honorable Joseph C. Pomponio, Jr., Judge
Civil Action No. 11-C-54

**REVERSED AND REMANDED**

**AND**

No. 12-1506

**VICKY LOU HUGHES,**
**Plaintiff Below, Petitioner**

**V.**

**WEST VIRGINIA UNIVERSITY,**
**JEANETTE MOTSCH and**
**MARY ROBERTA "BOBBIE" BRANDT,**
**Defendants Below, Respondents**

---

**Appeal from the Circuit Court of Monongalia County**
**Honorable Phillip D. Gaujot, Judge**
**Civil Action No. 12-C-321**

**REVERSED AND REMANDED**

---

**Submitted: October 1, 2013**
**Filed: November 13, 2013**

**COUNSEL IN CASE NUMBER 12-0477:**

Roger D. Forman
Daniel T. Lattanzi
The Law Office of
Roger D. Forman, L.C.
Charleston, West Virginia
Attorneys for the Petitioner

Allan N. Karlin
Jane E. Peak
Allen N. Karlin & Associates
Morgantown, West Virginia
Attorneys for *Amici Curiae*:
West Virginia Advocates, Inc.;
The West Virginia Conference
of Branches of the NAACP;
WV Free; The Mountain State
Bar Association; and American Civil
Liberties Union of West Virginia

Robert P. Martin
Michael W. Taylor
Bailey & Wyant, PLLC
Charleston, West Virginia
Attorneys for the Respondents

Patrick Morrisey
Attorney General
Jamie S. Alley
Senior Assistant Attorney
General
Civil Rights Division
Charleston, West Virginia
Attorneys for *Amicus Curiae*,
The West Virginia Human Rights
Commission

**David M. Hammer**
**Hammer, Ferretti & Schiavoni**
**Martinsburg, West Virginia**
**Attorney for *Amicus Curiae*,**
**Employment Lawyers Association**


**COUNSEL IN CASE NUMBER 12-1506:**

**Walt Auvil**
**Rusen & Auvil, PLLC**
**Parkersburg, West Virginia**
**Attorney for the Petitioner**

**Monte L. Williams**
**Deva A. Solomon**
**Steptoe & Johnson PLLC**
**Morgantown, West Virginia**
**Attorneys for the Respondents**


**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE WORKMAN, deeming herself disqualified, did not participate.**

**SYLLABUS BY THE COURT**

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."   Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

4.      "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."  Syllabus point 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

5.      "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their

common, ordinary and accepted meaning in the connection in which they are used." Syllabus point 1, *Miners in General Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982).

6.    A public employee *may* file a written grievance to the West Virginia Public Employee Grievance Board pursuant to W. Va. Code § 6C-2-4(a)(1) (2008) (Repl. Vol. 2010); however, such filing is permissive and not mandatory under the clear wording of the statute.

7.    "A plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act." Syllabus point 1, *Price v. Boone County Ambulance Authority*, 175 W. Va. 676, 337 S.E.2d 913 (1985).

8.    "The West Virginia Education and State Employees Grievance Board does not have authority to determine liability under the West Virginia Human Rights Act, W. Va. Code, § 5-11-1, *et seq.*; nevertheless, the Grievance Board's authority to provide relief to employees for 'discrimination,' 'favoritism,' and 'harassment,' as those terms are defined in W. Va. Code, 18-29-2 (1992), includes jurisdiction to remedy discrimination that also would violate the Human Rights Act." Syllabus point 1, *Vest v. Board of Education*, 193

W. Va. 222, 455 S.E.2d 781 (1995).

9.      A plaintiff may, as an alternative to filing a grievance with the West Virginia Public Employees Grievance Board, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.*

10.    "A civil action filed under the West Virginia Human Rights Act, W. Va. Code, 5-11-1, *et seq.*, is not precluded by a prior grievance decided by the West Virginia Education and State Employees Grievance Board arising out of the same facts and circumstances." Syllabus point 3, *Vest v. Board of Education*, 193 W. Va. 222, 455 S.E.2d 781 (1995).

11.    "For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative res judicata or collateral estoppel." Syllabus point 2, *Vest v. Board of Education*, 193 W. Va. 222, 455 S.E.2d 781 (1995).

12. A civil action commenced in circuit court under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.*, is not precluded by a grievance that was filed with, but not decided by, the West Virginia Education and State Employees Grievance Board, W. Va. Code § 6C-2-1 *et seq.*, and arising out of the same facts and circumstances.

**Davis, Justice:**

These consolidated appeals submit the same legal issue for this Court's review: whether a circuit court action alleging violations of the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.* ("WVHRA") is proper in the absence of the exhaustion of administrative remedies available pursuant to the West Virginia Public Employees Grievance Procedure, W. Va. Code § 6C-2-1 *et seq.* ("Grievance Procedure"). In these combined cases, Theresa Weimer ("Ms. Weimer") and Vicky Lou Hughes ("Ms. Hughes") (collectively, "the petitioners") appeal the respective circuit courts' dismissals of their complaints. On appeal to this Court, the petitioners argue that the circuit courts erred in the determinations that the exhaustion of the Grievance Procedure was a necessary precondition to the filing of a circuit court action. Upon a review of the parties' briefs,[1] the appendix records designated for appellate consideration, the governing law, and the parties' oral arguments, we reverse the rulings of the circuit courts and remand for further proceedings. Specifically, in Case Number 12-0477 regarding Ms. Weimer, we reverse the March 12, 2012, "Order Granting Motion to Dismiss for Failure to Exhaust Administrative Remedies" entered by the Circuit

---

[1] We acknowledge the contribution of the following *amici curiae* who filed briefs in this case: Employment Lawyers Association; The West Virginia Human Rights Commission; West Virginia Advocates, Inc.; The West Virginia Conference of Branches of the NAACP; WV Free; The Mountain State Bar Association; and American Civil Liberties Union of West Virginia. All of the *amici* briefs were filed in Ms. Weimer's appeal, Case Number 12-0477, and posit that the dismissal of claims for failure to exhaust grievance procedures should be reversed. We value the participation of the *amici* and will consider their briefs in conjunction with the parties' arguments.

1

Court of Pocahontas County and remand the case for further consideration consistent with this opinion. Additionally, in Case Number 12-1506 regarding Ms. Hughes, we reverse the Circuit Court of Monongalia County's November 13, 2012, "Order Granting Defendants' Motion to Dismiss" and remand for additional judicial proceedings comporting with the discussion contained herein.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Because the errors assigned in each of the cases *sub judice* are substantially the same, they have been consolidated for this Court's consideration and decision. Resolution of these cases is based purely on the legal issues. However, a brief recitation of the individual facts giving rise to each appeal is set forth below.

### A. *Theresa L. Weimer, Case Number 12-0477*

In 2006, Ms. Weimer began teaching at Pocahontas County High School ("PCHS"), a public school. During her teaching career at PCHS, she suffered from insulin-dependent diabetes, lumbar degenerative disk disease, depression, degenerative joint disease, fibromyalgia, plantar fasciitis, acute renal failure, hypertension, and sleep apnea. Ms. Weimer's medical problems were known to her supervisor, the school principal. Ms. Weimer asserts that the school principal harassed her, told her he needed "healthy teachers,"

and failed to provide accommodations. She received a letter in 2009 from the principal regarding her alleged inability to teach. Further, she was suspended without pay on November 30, 2009; however, this suspension eventually was converted to family medical leave. Ms. Weimer returned to work in Fall 2010, and states that she expected work accommodations. In particular, she requested smaller class sizes and/or assistance from a teacher's aide, which she asserts were refused by the principal.

In late 2011, Ms. Weimer tripped and fell in her classroom. Ms. Weimer contends that the principal used this incident against her based on the perception that it occurred because of her disabilities. Shortly thereafter, it was recommended that Ms. Weimer's employment be terminated: a pretermination hearing was conducted, which included evidence that Ms. Weimer had teaching deficiencies, including falling asleep while teaching and leaving students unattended. Based upon the recommendations of the school principal and the school superintendent, Ms. Weimer's position as a public school teacher was terminated by the Pocahontas County Board of Education on October 27, 2011.

Subsequent thereto, on November 30, 2011, Ms. Weimer filed a complaint in the Circuit Court of Pocahontas County against Thomas Sanders, the Principal of PCHS; C.C. Lester, the Superintendent of the Pocahontas County Board of Education; and the Pocahontas County Board of Education (collectively, "the Weimer respondents"). Ms.

3

Weimer did not file a grievance with the West Virginia Public Employees Grievance Board ("Grievance Board"). *See* W. Va. Code § 6C-2-1 *et seq.* The circuit court complaint asserted violations under the WVHRA: discriminatory discharge on the basis of actual or perceived disability; hostile work environment on the basis of actual or perceived disability; and disparate discipline on the basis of actual or perceived disability.

The Weimer respondents filed a motion to dismiss the lawsuit, in which they argued that Ms. Weimer's complaint was flawed because she failed to exhaust her administrative remedies with the Grievance Board. By order entered March 12, 2012, the circuit court granted the motion to dismiss. The lower court reasoned that facts alleged in the complaint point to "discrimination," "harassment," "favoritism," and other matters that may properly be addressed by the Grievance Procedure. Ultimately, the circuit court ruled that Ms. Weimer first must exhaust her administrative remedies available through the Grievance Procedure prior to bringing a claim pursuant to the WVHRA before the circuit court. Ms. Weimer appealed to this Court, and her case was consolidated with *Hughes v. West Virginia University*, Case Number 12-1506.

### B. Vicky Lou Hughes, Case Number 12-1506

Ms. Hughes began employment in December 2007 as a coordinator/clinical associate for the Center for Excellence in Disabilities ("CED"), a branch of West Virginia

University ("WVU"). Her position provided Traumatic Brain Injury ("TBI") services throughout the state. During the interview process, Ms. Hughes advised the CED that she has a disability known as multiple chemical sensitivity, which requires reasonable accommodation. Initially, the CED accommodated Ms. Hughes's requests, permitting her to use her personal vehicle for work travel and allowing her to work from a different office location while her regular office location was undergoing renovation.

On April 6, 2010, a meeting was held wherein Ms. Hughes was informed that there had been consumer complaints regarding her job performance. After an investigation, a warning letter was issued June 11, 2010, stating that Ms. Hughes's work quality was unsatisfactory. After the April 6, 2010, meeting, it was alleged that Ms. Hughes had engaged in additional inappropriate and potentially unethical clinical procedures and client interactions. Ms. Hughes argued that these allegations were false and were made with the purpose and intent of harassing her in retribution for her requests for accommodation.

Ms. Hughes, in June 2010, suffered an orthopedic injury that resulted in a medical leave of absence of approximately one year. When she attempted to return to work, she was advised that several of her requests for accommodation had been rejected. On October 31, 2011, her employment was terminated.

5

Ms. Hughes initiated the Grievance Procedure, asserting that her employer had refused to provide needed reasonable accommodations. Reportedly, several grievance hearings had occurred, with another grievance hearing scheduled to take place in late 2012. However, prior to the holding of the latest grievance hearing, Ms. Hughes filed the instant civil action in circuit court against the respondents: WVU;[2] Jeanette Motsch, Executive Officer for Social Justice; and Mary Roberta "Bobbie" Brandt, Medical Management and ADA Compliance Officer (collectively, "the Hughes respondents"). In her civil action, Ms. Hughes alleged violations of the WVHRA for the failure to provide reasonable accommodations for her disability. The Hughes respondents moved the circuit court to dismiss the complaint, arguing that the circuit court lacked subject matter jurisdiction based upon Ms. Hughes's failure to exhaust all available administrative remedies prior to filing the civil action. Moreover, the Hughes respondents argued that Ms. Hughes had started the grievance process, which must be completed prior to a civil action on the same issues.

By order of November 13, 2012, the circuit court granted the motion to dismiss, finding that a circuit court action under the WVHRA is not precluded by prior grievance proceedings. However, the circuit court found that a parallel, contemporaneous proceeding

_____

[2]Recognizing the circuit court's explanation that the parties incorrectly named WVU as the defendant and that the true party defendant is the West Virginia Board of Governors, we use the misnomer "WVU" to maintain consistency with the case styling below.

6

may not be maintained. Accordingly, the circuit court ruled that Ms. Hughes, having elected the Grievance Procedure, must exhaust her administrative remedies before filing an action in circuit court. Ms. Hughes appealed to this Court, and her case was consolidated with *Weimer v. Sanders*, Case Number 12-0477.

## II.

## STANDARD OF REVIEW

The consolidated appeals before this Court result from the lower courts' granting of motions to dismiss. It is well settled that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W. Va. 770, 461 S .E.2d 516 (1995). Further, recognizing that this case requires review of a purely legal issue, we have counseled that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Mindful of this applicable standard, we now consider the substantive issues raised herein.

# III.

## DISCUSSION

On appeal to this Court, Ms. Weimer asserts that the circuit court erred in its determination that administrative procedures must be exhausted before an action can be maintained in the circuit court. Thus, Ms. Weimer claims that the circuit court's dismissal of her complaint was flawed. Similarly, Ms. Hughes argues that the circuit court erred in dismissing her complaint based on its finding that she had not completed the grievance process and, further, in its ruling that commencement of the Grievance Procedure requires conclusion of the same. In essence, these cases present to this Court the question of whether a public employee, whose employment confers grievance rights before the Grievance Board, is required to exhaust the administrative Grievance Procedure before initiating a complaint in the circuit court alleging violations of the WVHRA. Moreover, Ms. Hughes's case raises the additional question of whether commencement of the Grievance Procedure precludes the institution of a circuit court action prior to exhaustion of the Grievance Procedure.

At the outset, the initial question for this Court is whether the Grievance Procedure supplies an exclusive remedy or mandatory proceeding to the petitioners. To determine the answer, this Court must look to the statute. The Grievance Procedure applies to public employees and states, in pertinent part, that

> [w]ithin fifteen days following the occurrence of the
> event upon which the grievance is based, or within fifteen days

8

of the date upon which the event became known to the employee, or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, an employee may file a written grievance with the chief administrator stating the nature of the grievance and the relief requested and request either a conference or a hearing. . . .

W. Va. Code § 6C-2-4(a)(1) (2008) (Repl. Vol. 2010). The first step in statutory construction is to identify the intent expressed by the Legislature in promulgating the provision at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Next, we look to the particular language used by the Legislature. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). *Accord* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Further guidance states that, "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982).

9

Under the plain wording of the statute, a public employee has a fifteen day time limit that begins to accrue based upon different factual scenarios. Within the applicable fifteen day period, "an employee *may* file a written grievance with the chief administrator stating the nature of the grievance[.]" (Emphasis added). As a general rule, the word "may" is afforded a permissive connotation, which renders the referenced act discretionary, rather than mandatory, in nature. *See State v. Hedrick*, 204 W. Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion." (citations omitted)). Thus, applying this discretionary connotation to the present case, we now hold that a public employee *may* file a written grievance to the West Virginia Public Employee Grievance Board pursuant to W. Va. Code § 6C-2-4(a)(1) (2008) (Repl. Vol. 2010); however, such filing is permissive and not mandatory under the clear wording of the statute.

Having determined that the Grievance Procedure is discretionary, we turn to the issue of whether the decision to forego the filing of the permissive grievance with the Grievance Board precludes a petitioner's right to file a cause of action elsewhere. In other words, we must determine whether the exhaustion of administrative remedies is a precondition to the filing of an action in circuit court.

10

As noted previously, Ms. Weimer filed her action in the circuit court pursuant to the WVHRA, without having filed a grievance with the Grievance Board.[3] We have expressly held that a claimant may pursue an action in either the Human Rights Commission or the circuit court. Specifically, "[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act." Syl. pt. 1, *Price v. Boone Cnty. Ambulance Auth.*, 175 W. Va. 676, 337 S.E.2d 913 (1985).[4] Despite the fact that the Human Rights Commission is an administrative agency that has jurisdiction to evaluate such claims, there is no requirement that a complainant must exhaust the administrative remedies available through the Human Rights Commission prior to filing a circuit court action.[5]

---

[3]Factually and legally, Ms. Hughes's case raises an additional issue than Ms. Weimer's situation. Ms. Weimer never availed herself of the grievance process. However, Ms. Hughes originally filed a grievance, but then abandoned the claim and filed her case in circuit court. The legal impact of this factual departure will be discussed, *infra*.

[4]Similarly, in a recent decision under the West Virginia Wage Payment and Collection Act ("WVWPCA"), this Court focused on the clear language of the WVWPCA and held that, "[p]ursuant to W. Va. Code, 21-5-12(a) (1975), a person whose wages have not been paid in accord with [WVWPCA] may initiate a claim for the unpaid wages either through the administrative remedies provided under the Act or by filing a complaint for the unpaid wages directly in circuit court." Syl. pt. 3, *Beichler v. West Virginia Univ. at Parkersburg*, 226 W. Va. 321, 700 S.E.2d 532 (2010). This Court was persuaded that if the Legislature had intended to require a claimant to exhaust administrative remedies prior to filing a civil action under the WVWPCA, the Legislature could have so provided, but it did not. Similar to the WVWPCA, the WVHRA has no requirement for the exhaustion of any administrative remedies prior to pursuing a civil action.

[5]The general rule in this Court with regard to the exhaustion of administrative remedies provides "that where an administrative remedy is provided by statute or by rules

(continued...)

11

It stands to reason that if a claimant is not required to maintain an action before

the Human Rights Commission prior to filing a claim in the circuit court, the claimant is,

---

⁵(...continued)
and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syl. pt. 1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n.*, 143 W. Va. 674, 104 S.E.2d 320 (1958). *See also* Syl. pt. 1, *Sturm v. The Bd. of Educ. of Kanawha Cnty.*, 223 W. Va. 277, 672 S.E.2d 606 (2008) (same); Syl. pt. 7, *Expedited Trans. Sys. Inc. v. Vieweg*, 207 W. Va. 90, 529 S.E.2d 110 (2000) (same). However, we also have recognized

> that where separate legislative enactments exist which provide separate administrative remedies, preclusive doctrines will not necessarily be applied. *See Collins v. Elkay Mining Co.*, 179 W. Va. 549, 371 S.E.2d 46 (1988); *Davis v. Kitt Energy Corp.*, 179 W. Va. 37, 365 S.E.2d 82 (1987); *Wiggins v. Eastern Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987).

*Liller v. West Virginia Human Rights Comm'n,* 180 W. Va. 433, 441, 376 S.E.2d 639, 647 (1988). Indeed, our cases require us to determine "whether applying the doctrines [of preclusion] is consistent with the express or implied policy in the legislation which created the body." Syl. pt. 3, in part, *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 359 S.E.2d 124 (1987).

We also have recognized exceptions to the rule requiring the exhaustion of remedies. Indeed, in *Price*, we recognized that the alternative administrative and judicial avenues run "counter to the general rule of statutory construction that where a new right is created by statute, the remedy provided for its violation is exclusive." *Price v. Boone Cnty. Ambulance Auth.*, 175 W. Va. 676, 678, 337 S.E.2d 913, 916-17 (1985). "Where the available administrative remedy is inadequate, this Court recognizes an exception to the general rule that where a new right is created by statute, the remedy can be only that which the statute prescribes." Syl. pt. 2, *Wiggins v. Eastern Assoc. Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987). Also, "[t]his Court will not require the exhaustion of administrative remedies where such remedies are duplicative or the effort to obtain them futile." Syl. pt. 6, *Wiggins, id.* Finally, "[t]he doctrine of exhaustion of administrative remedies is inapplicable where resort to available procedures would be an exercise in futility." Syl. pt. 1, *State ex rel. Board of Educ. v. Casey*, 176 W. Va. 733, 349 S.E.2d 436 (1986).

likewise, not required to file a grievance with the Grievance Board before filing a claim pursuant to the WVHRA in the circuit court. This is especially true given the fact that the Human Rights Commission has broader power and authority to remedy discrimination claims than does the Grievance Board.[6] As this Court has explained,

> [t]he West Virginia Education and State Employees Grievance Board does not have authority to determine liability under the West Virginia Human Rights Act, W. Va. Code, § 5-11-1, *et seq.*; nevertheless, the Grievance Board's authority to provide relief to employees for "discrimination," "favoritism," and "harassment," as those terms are defined in W. Va. Code, 18-29-2 (1992),[7] includes jurisdiction to remedy discrimination that also would violate the Human Rights Act.

Syl. pt. 1, *Vest v. Board of Educ.*, 193 W. Va. 222, 455 S.E.2d 781 (1995) (internal footnote added). Therefore, we now hold that a plaintiff may, as an alternative to filing a grievance with the West Virginia Public Employees Grievance Board, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq*.

---

[6]While the Grievance Board has authority to provide remedies for causes of action within its definitions, we note that the Grievance Procedure and the WVHRA have different definitions for the term "discrimination." Under the grievance process, "discrimination" refers to "any differences in the treatment of similarly situated employees, unless the differences are related to the actual job responsibilities of the employee or are agreed to in writing by the employees." W. Va. Code § 6C-2-2(d). However, pursuant to the WVHRA, "'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate." W. Va. Code § 5-11-3(h).

[7]W. Va. Code §18-29-2 (1992) has been recodified and now is found at W. Va. Code § 6C-2-2 (2008) (Repl. Vol. 2010).

13

To hold otherwise would create a disparity between remedies for WVHRA violations available to public employees and employees in the private sector. The Legislature, in enacting the WVHRA, sets forth that all West Virginia citizens shall have equal employment opportunities:

> It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property. Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability. Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, blindness, disability or familial status.
>
> The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W. Va. Code § 5-11-2 (1998) (Repl. Vol. 2011). We discern no reason why a public employee should be treated differently than a private employee in cases of alleged discrimination, *et cetera*, and be deprived of the opportunity to proceed directly to the Human Rights Commission or the circuit court.[8] Thus, we find that the circuit court erred when it

---

[8]One argument set forth by the petitioners is that selecting any one specific avenue for relief could result in an expiration of time within which to file a proper action in
(continued...)

14

dismissed Ms. Weimer's action on the basis that she had failed to exhaust the administrative remedies afforded to her under the Grievance Procedure. Furthermore, dismissal of Ms. Hughes's claim on the basis that she failed to exhaust her administrative remedies was also in error.

Having determined that a claimant is not required to pursue his or her administrative remedies under the Grievance Procedure prior to the commencement of an action in circuit court that alleges a claim under the WVHRA, we now turn to discuss the additional legal issue raised by the facts of Ms. Hughes's case. Ms. Hughes initiated the Grievance Procedure and several grievance hearings were held. Another grievance hearing was scheduled; however, prior to the time for the scheduled grievance hearing, Ms. Hughes filed the instant civil action in circuit court. The circuit court granted the motion to dismiss on the basis that "Ms. Hughes has failed to exhaust her available remedies by pursuing an action in Circuit Court while the grievance process she had previously commenced is still pending."

We have held that a previous grievance does not preclude a subsequent action in circuit court. In that regard, we stated that "[a] civil action filed under the West Virginia

---

[8](...continued)
one of the other forums. Our resolution of this matter obviates any need to discuss perceived issues regarding lapsing of time frames.

Human Rights Act, W. Va. Code, 5-11-1, *et seq*., is not precluded by a prior grievance decided by the West Virginia Education and State Employees Grievance Board arising out of the same facts and circumstances." Syl. pt. 3, *Vest*, 193 W. Va. 222, 455 S.E.2d 781. Because of the striking differences between the procedures before the Grievance Board and the Human Rights Commission and/or a circuit court, the *Vest* Court determined that even a resolution of a grievance by the Grievance Board does not preclude further adjudication of the claims pursuant to the WVHRA. Specifically,

> [f]or issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative res judicata or collateral estoppel.

Syl. pt. 2, *Vest*, *id.*

> In reaching the result in *Vest*, we explained that
>
> [t]he procedures employed by the Grievance Board are not substantially similar to those employed by either a court of law or the Human Rights Commission (Commission), and the differences are of profound significance. Thus, even if a grievance hearing examiner concludes that an employer's adverse action to a grievant was not "discriminatory," but was job related, that determination is not binding on a court or the Commission deciding a claim under the Human Rights Act–regardless of whether the grievant alleged or adduced evidence of discriminatory motive or disparate impact at the grievance hearing and regardless of whether the Grievance Board made a

16

determination about such issues.

> As noted above, the Legislature designed the grievance process to be simple and expeditious. Consequently, the process is streamlined and lacks many of the adversarial accoutrements found in judicial and Commission's proceedings. In the vast majority of grievances, for example, the grievant is not represented by a lawyer. Moreover, and more importantly, the grievance process does not provide for any of the discovery mechanisms available under the Rules of Civil Procedure and the Commission's procedural rules. Finally, in stark contrast to the Human Rights Act, the grievance statute does not provide for the right to an independent investigation of each grievance filed before the Board, does not make available at public expense representation by a lawyer for cases that proceed to a hearing before an administrative law judge, and does not give employees the option of skipping the administrative process and pursuing their claims *de novo* in circuit court where jury trials and the full array of legal and equitable remedies are obtainable.

*Vest*, 193 W. Va. at 227, 455 S.E.2d at 786.

Factually, Ms. Vest, a substitute teacher at a public school, filed a grievance with the Grievance Board based on her termination. At a grievance hearing, Ms. Vest presented evidence in support of her discrimination claim. However, in her post-hearing brief, she voluntarily relinquished her claim upon her belief that the Grievance Procedure was not the proper forum to hear her discrimination claim. Ms. Vest's grievance was denied in a decision that contained no conclusions of law with regard to her discrimination claim. Despite the fact that her grievance had culminated in a decision, albeit a decision that did not

17

address the discrimination claim, we found the Grievance Board's determinations had no preclusive effect over her human rights claims.

*Vest* stands for the proposition that a claimant can prosecute a case before the Grievance Board to its conclusion, yet still retain the right to redress for the same issue before the circuit court. The logic follows that, if a claimant commences an action before the Grievance Board and then abandons or relinquishes the claims so that there is no final decision from the Grievance Board, there is nothing to preclude a subsequent action in the circuit court. Based on the foregoing and this Court's previous allusions to the same, we now specifically hold that a civil action commenced in circuit court under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.*, is not precluded by a grievance that was filed with, but not decided by, the West Virginia Education and State Employees Grievance Board, W. Va. Code § 6C-2-1 *et seq.*, and arising out of the same facts and circumstances.[9]

---

[9]We recognize that there may be some overlap of remedies between the different statutory schemes. We emphasize, however, that there can be only one recovery for each injury. An award under either process will be set off against any recovery from the other forum.

18

**IV.**

**CONCLUSION**

Based on the foregoing, the circuit courts' dismissal orders are reversed and remanded for further consideration.

Reversed and Remanded.