# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2016 Term

No. 14-1118

**FILED**

**June 3, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**J. MICHAEL TEETS, COMMISSIONER;
WILLIAM E. KEPLINGER, JR., COMMISSIONER;
AND THE HARDY COUNTY COMMISSION,**
Respondents Below, Petitioners

**V.**

**WENDY J. MILLER, JOHN A. ELMORE,
B. WAYNE THOMPSON, OVID NEED,
AND BONNIE L. HAGGERTY,**
Petitioners Below, Respondents

---

Appeal from the Circuit Court of Hardy County
Honorable Andrew N. Frye, Jr., Senior Status Judge
Civil Action No. 14-C-17
**REVERSED**

---

Submitted: May 18, 2016
Filed: June 3, 2016

John A. Kessler
David R. Pogue
Carey, Scott, Douglas & Kessler, PLLC
Charleston, West Virginia
Attorneys for Petitioners,
J. Michael Teets, Commissioner

J. David Judy, III
Judy & Judy
Moorefield, West Virginia
Attorney for the Respondents

Ancil G. Ramey

William E. Keplinger, Jr.,
Commissioner

John W. Cooper
Cooper and Preston, PLLC
Parsons, West Virginia
Attorney for Petitioner
Hardy County Commission

Steptoe & Johnson PLLC
Charleston, West Virginia
Bridget M. Cohee
Steptoe & Johnson PLLC
Martinsburg, West Virginia
Attorneys for Petitioner
Steptoe & Johnson PLLC
Former Attorneys for Petitioner
Hardy County Commission


**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**
**JUSTICE DAVIS, deeming herself disqualified, did not participate.**
**JUDGE PAUL T. FARRELL sitting by temporary assignment.**
**JUSTICES BENJAMIN and LOUGHRY concur, in part, dissent, in part, and reserve the right to file separate opinions.**

**SYLLABUS BY THE COURT**

1.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

2.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syllabus point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

3.      Pursuant to W. Va. Code § 7-15-18 (1975), the provisions of the Emergency Ambulance Service Act of 1975, W. Va. Code § 7-15-1 *et seq.,* shall be liberally construed to accomplish its purpose and no procedure or proceedings, notices, consents or approvals shall be required in connection therewith except as may be prescribed therein. Accordingly, a county commission taking action in connection with the Emergency Ambulance Service Act of 1975 is not required to comply with the open meeting and/or notice requirements of the Open Government Proceedings Act, W. Va. Code § 6-9A-1 *et seq.*, or W. Va. Code § 7-1-2 (1923).

**Ketchum, Chief Justice:**

The action underlying this appeal was brought by Wendy J. Miller,[1] John A. Elmore, B. Wayne Thompson, Ovid Need, and Bonnie Haggerty, citizens of Hardy County (collectively "Hardy County Citizens"), respondents herein, seeking to remove two commissioners serving on the Hardy County Commission ("Commission" or "the Commission"), and to void the Commission's purchase of a building and its imposition of a Special Emergency Ambulance Service Fee ("Ambulance Fee"). The action was bifurcated, and this appeal pertains only to the portion of the proceedings below held in the Circuit Court of Hardy County seeking to void the building purchase and the Ambulance Fee.[2] In this appeal, the Commission and two of its commissioners, J. Michael Teets ("Commissioner Teets") and William E. Keplinger, Jr. (Commissioner Keplinger"), seek review of two orders issued by the circuit court. In those orders, the circuit court found both the building purchase and the Ambulance Fee were invalid because the Commission violated the Open Governmental Proceedings Act, W. Va. Code § 6-9A-1 *et seq.*, and, alternatively, because the Commission failed to provide proper notice of special meetings pursuant to W. Va. Code § 7-1-2 (1923), which failure deprived the Commission of jurisdiction over the

---

[1]Prior to this appeal, Wendy Miller filed in the circuit court a motion to withdraw as a petitioner in this matter. By order entered October 10, 2014, the circuit court granted Ms. Miller's motion. Accordingly, she is not a party to this appeal.

[2]The removal issue was decided by a three judge panel. The panel ultimately ruled that Commissioners Teets and Keplinger were not subject to removal. That decision is not part of the instant appeal.

1

challenged acts. Based upon those findings, the circuit court, *inter alia*, granted the Hardy County Citizens' motion for injunctive relief and expressly prohibited the Commission from voting, in an open meeting with proper notice, to validate its purchase of the building and also prohibited the Commission from instituting an Ambulance Fee "unless and until ambulance service is not otherwise available to all residents of Hardy County"; granted the Hardy County Citizens' motion for attorney's fees and directed the Commission to pay $112,000 for said fees, plus interest, to counsel for the plaintiffs; rendered judgment against Commissioner Teets and Commissioner Keplinger, jointly and severally, in an amount equal to that paid for the building purchase, which was $1,130,000, plus interest; and denied a motion by the Commission to join as parties to the litigation the sellers of the building.

Also before this Court is Steptoe & Johnson, LLC, former counsel to the Commission in the proceedings below. Steptoe & Johnson seeks review of a separate order issued by the circuit court that found Steptoe & Johnson had a disqualifying conflict in regard to this action, and further compelled Steptoe & Johnson to refund certain attorney's fees earned by the firm.

We find that, pursuant to W. Va. Code § 7-15-18 (1975), the Commission was not required to comply with the Open Governmental Proceedings Act or W. Va. Code § 7-1-2 under the particular circumstances presented herein. Therefore, we reverse all three of the

2

circuit court's orders appealed in this action.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Because the circuit court agreed to proceed on the record created before the three-judge panel that heard the removal portion of the action, the facts of this case were primarily developed in the removal action with the parties providing limited additional evidence to the circuit court. We begin our recounting of the facts with background information necessary to understand the events that later unfolded and led to the instant litigation.

Emergency ambulance services were provided to residents of Hardy County through a mix of paid and volunteer crews. During the fall of 2011, three crews served the bulk of Hardy County's emergency ambulance needs: Fraley Ambulance Service, Mathias-Baker Rescue Squad, and Wardensville Rescue Squad. On November 20, 2011, the Commission learned that the Mathias-Baker Rescue Squad was experiencing financial difficulties when Mathias-Baker sought funding from the Commission to remain solvent. Although the Commission provided $300,000 to keep Mathias-Baker operating, the troubled

3

rescue squad closed suddenly in October 2012.[3]  Members of the Mathias-Baker Rescue

Squad thereafter provided emergency ambulance services on a volunteer basis, however the

volunteer ambulance services ceased in May 2013.  Meanwhile, in response to the closure

of the Mathias-Baker Rescue Squad, at a Commission meeting held on November 20, 2012,

the Commission voted to hire a county medic and to create the Hardy County Emergency

Ambulance Authority ("Ambulance Authority").[4]

To facilitate our recitation of the remaining course of events in this case, it is

helpful to first explain the normal process followed by the Commission in announcing its

meetings.  This process apparently is in compliance with the "Hardy County Rules for

Conducting Public Meetings" as promulgated in 2004.  Typically, two weeks prior to each

meeting of the Commission, the county clerk places the following announcement, which the

Commission refers to as its "Standard Agenda," in the classified section of the Moorefield

Examiner newspaper:

---

[3]The Commission states in its brief that it approved the $300,000 request
without extensive information being provided and with no formal notice to the public.  The
Commission explains that, while it knew that the Mathias-Baker Rescue Squad had debts
approximating $2,700,000.00 at the time it approved the funding request, it did not know at
that time that Mathias-Baker had reached a settlement agreement with the United States
Attorney's Office requiring Mathias-Baker to pay fines amounting to nearly $1,100,000.00
as a result of fraudulent Medicaid and Medicare billing practices.

[4]W. Va. Code § 7-15-4 (1975) mandates, with certain exceptions, that county
commissions "cause emergency ambulance service to be made available to all the residents
of the county where such service is not otherwise available," and further provides that county
commissions "may cause such services to be provided by an authority[.]"

NOTICE OF HARDY COUNTY COMMISSION MEETING

The public and news media are hereby notified that the Hardy County Commission will hold a meeting in Room 101 at the Hardy County Courthouse, 204 Washington Street, Moorefield, WV on [the day of the week for the specific advertized meeting would be inserted here], [the date and year for the specific advertized meeting would be inserted here] at 9:00 A.M.

The County Commission meeting will be open to all members of the public. A quorum of the County Commission is scheduled to meet and make decisions and take official action on matters scheduled on the meeting agenda.

Any person desiring to address the County Commission should contact the County Clerk's Office at the telephone number and/or address below.

A copy of the meeting agenda is available, in advance, to any member of the public and/or news media at the Hardy County Clerk's Office, Room 111, 204 Washington Street, Moorefield, WV 26836 or by contacting the Hardy County Clerk's Office at telephone number [telephone number provided here] or facsimile number [facsimile number provided here].

This "Standard Agenda" also is posted on the courthouse door. A second agenda, referred to by the Commission as its "Appointments Sheet," is placed on the desk of the county clerk. The county clerk and his staff then create a list on the "Appointments Sheet" that includes names of persons wishing to be heard and/or topics to be considered at the upcoming meeting of the Commission. Additions to the "Appointments Sheet" may be made up to the time of the meeting. The Commission explains that, anyone who reads the published notice or who has an interest in a particular meeting may contact the county clerk to obtain a copy of "Standard Agenda" and/or the "Appointments Sheet." The circuit court observed that,

5

because the "Appointments Sheet" may be supplemented up to the time of the meeting, anyone obtaining an earlier version of the list would not thereby be informed of all persons to be heard and/or topics to be considered at a particular meeting.[5]

Having established the Commission's general procedure for providing notice of its meetings, we turn to the facts pertaining to the acts taken by the Commission and Commissioners Teets and Keplinger that were challenged below.[6] The imposition of the Ambulance Fee was first discussed at a meeting of the Commission held on March 5, 2013, during which the county prosecuting attorney was instructed to "prepare an Ordinance to impose a fee according to §7-15-15 [sic]."[7] Neither the "Standard Agenda" nor the "Appointment Sheet" prepared for the March 5 meeting contained any indication that an Ambulance Fee would be a topic of discussion during the meeting.

The Commission's purchase of a building was first addressed at a meeting held

---

[5]We note, however, that pursuant to W. Va. Code § 6-9A-3(c) (2013), "persons who desire to address the governing body may not be required to register to address the body more than fifteen minutes prior to time the scheduled meeting is to commence."

[6]At the time relevant to this appeal, the three Commissioners who made up the Commission were Commissioner Teets, who served as president, Commissioner Keplinger, and Commissioner A. J. Wade. Commissioner Wade retired from the Hardy County Commission effective December 31, 2014. He is not a party to this appeal.

[7]Presumably, the intended reference was to W. Va. Code § 7-15-17 (1999), which authorizes a county commission to impose a special emergency ambulance service fee.

6

on May 21, 2013. There was nothing on either the Standard Agenda or the "Appointment Sheet" prepared for the meeting to indicate that the purchase of a building would be discussed. During the course of the meeting, however, an officer of the Ambulance Authority requested an executive session[8] regarding the purchase of property. An executive session was held, but no vote was taken on the matter. It is now known that the property purchase discussed in the executive session was a building that had been owned by the Mathias-Baker Rescue Squad ("Baker building"). At the time the Mathias-Baker Rescue Squad closed, the Baker building was pledged as collateral to secure numerous notes held

---

[8]Pursuant to W. Va. Code § 6-9A-4(b)(9) (1999):

> (b) An executive session may be held only upon a majority affirmative vote of the members present of the governing body of a public agency. A public agency may hold an executive session and exclude the public only when a closed session is required for any of the following actions:
>
> . . . .
>
> (9) To consider matters involving or affecting the purchase, sale or lease of property, advance construction planning, the investment of public funds or other matters involving commercial competition, which if made public, might adversely affect the financial or other interest of the state or any political subdivision: Provided, That information relied on during the course of deliberations on matters involving commercial competition are exempt from disclosure under the open meetings requirements of this article only until the commercial competition has been finalized and completed: Provided, However, that information not subject to release pursuant to the West Virginia Freedom of Information Act does not become subject to disclosure as a result of executive session;

7

by the Capon Valley Bank. The Capon Valley Bank had foreclosed and planned to sell the Baker building by public auction. The CEO of Capon Valley Bank testified that, on two separate occasions prior to the sale, all three Hardy County Commissioners met with bank representatives to discuss purchasing the Baker building. The meetings dealt primarily with procedure. The Commissioners wanted to know what the "processes would be and what the time frame would be. . . . [T]hey wanted to know at what point the bank would have to begin to repossess collateral and secure buildings, et cetera."

The Commission also held a meeting on June 4, 2013, at which it authorized the Ambulance Authority to bid on the Baker building by vote of two to one, with Commissioners Teets and Keplinger voting in favor and Commissioner Wade voting against. The Commission then retired into executive session to discuss the building purchase. The circuit court found that there was no notice to the public that the Commission would vote on whether to bid on the Baker building at this meeting, and the county clerk admitted the same during his testimony. Moreover, the circuit court found that the public likewise was without notice that the Ambulance Authority would present the Commission with a proposed budget related to operating the building and that the budget included the Ambulance Fee to be imposed upon county citizens.

Another meeting relevant to this case occurred on June 18, 2013. The

"Appointment Sheet" for this meeting contained an item stating "HCEAA Jerry Moore/Greg Greenwalt fuel cards, medic, *building* etc." (emphasis added). During the meeting, the Ambulance Authority advised the Commission of financing options for the Ambulance Authority's purchase of the Baker building. The Commission approved a line item addition to its budget of $100,000 to be given to the Ambulance Authority annually to allow it to secure a loan for its purchase of the Baker building. In addition the Commission discussed the Ambulance Fee and an upcoming public hearing on the same.

Thereafter, on June 24, 2013, and July 15, 2013, the Commission held public hearings to receive public comments on the proposed adoption of the Ambulance Fee. Notice of these two hearings was published in the Moorefield Examiner newspaper. The notice for the second hearing incorrectly advertised the date of the meeting as July 3, 2013. The public was advised in the notice that "[t]he proposed fee amounts being considered are $10.00, $12.00, or $14.00 per month. The proposed fee will/may be applicable to all property owners with property that has a residence structure upon it."

At a July 16, 2013, meeting of the Commission, imposition of the Ambulance Fee was rejected by Commissioners Keplinger and Wade, who voted to not impose the fee. In addition, Commissioner Wade moved that the Baker building not be purchased. The motion passed with Commissioners Wade and Keplinger voting in favor thereof. The

9

"Appointment Sheet" for this meeting contained no indication that the Baker building would be discussed, but did contain an item stating "Emergency Ambulance Fee & Ordinance Set amount &/or adopt ordinance."

At a Commission meeting held on August 2, 2013, the Commission again addressed the Baker building and the Ambulance Fee. The "Appointment Sheet" for this meeting contained a line stating "EAA [Ambulance] Fee," and the word "building" was handwritten on the same line. The minutes for this meeting reflect that, after some favorable discussion regarding the Ambulance Fee and the Baker building,

> Commissioner Keplinger made a motion to set the [Ambulance F]ee at $10.00 per month and buy the [Baker] building, seconded by Commissioner Wade; President Teets called for discussion, Commissioner Keplinger stated that we don't know what it is going to exactly cost and the fee may go down. I felt bad last time we left, voting no; it bothered me; you don't do it for the reason of popularity. Commissioner Teets stated that all the money will go to the ambulance authority; we will not change our minds. There being no further discussion President Teets called for a vote and Commissioner Keplinger voting Yea, Commissioner Wade voting Nay and Commissioner Teets voting Yea, President Teets declared the motion passed.

The minutes further reflect that, toward the end of the meeting,

> [i]t was moved by Commissioner Keplinger to transfer funding to [the Ambulance A]uthority to pay the entire amount and not borrow any money for the [Baker] building, seconded by Commissioner Wade; President Teets called for discussion; there being none, a vote was called for and Commissioners Keplinger and Teets voting in the affirmative, and Commissioner Wade voting in the negative, the motion was

10

passed and declared approved by President Teets.

Thereafter, the Commission paid the full amount for the Baker building. The purchase transaction closed on August 6, 2013, and the Commission gained possession of the building on that date.

Finally, the Commission held a meeting on August 20, 2013. The Appointment sheet for this meeting contained an item stating "Order adopting fee ordinance – fee ordinance-order creating special checking acct." After a brief discussion of the Ambulance Fee ordinance, Commissioner Keplinger moved for a vote adopting the ordinance. The motion passed with Commissioner Teets and Keplinger voting in favor thereof.

Thereafter, on November 4, 2013, the Hardy County Citizens filed a two-part petition against Commissioners Teets and Keplinger and the Commission. The petition sought removal of Commissioners Teets and Keplinger and additionally sought to invalidate and vacate the Ambulance Fee ordinance and the purchase of the Baker building. The case was bifurcated and the law firm of Steptoe & Johnson was hired by the West Virginia Counties Risk Pool ("the Risk Pool") to defend the removal action. A reservation of rights was claimed by the Risk Pool and coverage was denied to the Commission on the remaining part of the petition that sought to invalidate the Ambulance Fee and the purchase of the Baker

11

building.[9] A three-judge panel heard the removal action and found no misconduct warranting removal of Commissioners Teets and Keplinger.

The Circuit Court of Hardy County thereafter heard the portion of the case seeking nullification of the Ambulance Fee and the purchase of the Baker building. The circuit court relied in large part upon the record created in the removal proceeding, and also heard arguments and took supplemental evidence. Thereafter, the circuit court entered a series of orders relevant to this appeal. By Final Order entered August 8, 2014, the circuit court ruled that the actions of the Commission implementing the Ambulance Fee and the purchase of the Baker building were both void. The circuit court ordered the Commission to refund all moneys collected for the Ambulance Fee. By subsequent order entered on August 29, 2014, the circuit court temporarily enjoined the Commission from taking any votes or otherwise considering the Special Emergency Ambulance Service Fee ordinance or the purchase of the Baker building until a full hearing could be held on the Hardy County Citizens' "Motion to Enforce the Final Order of August 8, 2014, and Motion for Injunctive Relief."

---

[9]Even though the Risk Pool did not provide a defense for the portion of the action seeking to invalidate the Ambulance Fee and the purchase of the Baker building, Steptoe & Johnson continued to represent the Commission by virtue of an engagement letter signed by Commissioner Teets.

12

Thereafter, the circuit court addressed numerous outstanding motions by Final Order entered on October 10, 2014. Relevant to this appeal, the circuit court granted a motion filed by the Hardy County Citizens seeking attorney's fees and awarded them $112,000.00, plus interest, for said fees; denied a motion filed by Commissioners Teets and Keplinger seeking to join, as indispensable parties, the Capon Valley Bank and Jack Walters, as Trustee of the Capon Valley Bank, who were the sellers of the Baker building; granted the Hardy County Citizens' motion for injunctive relief and ordered that no Ambulance Fee could be imposed by the Commission until ambulance service is not otherwise available to all residents of Hardy County; entered judgment, jointly and severally, against Commissioners Teets and Keplinger in the amount of $1,130,000.00, which represented the amount paid by the Commission to purchase the Baker building; and observed a conflict now existed between the Commission and Commissioners Teets and Keplinger, and, therefore, ordered the Hardy County prosecuting attorney to protect the interests of the Commission.[10]

A notice of appeal was then filed by Steptoe and Johnson on behalf of the Commission and Commissioners Teets and Keplinger. This Court entered an order staying all proceedings pending appeal. The Hardy County Citizens then raised questions in this Court about whether Steptoe & Johnson should be disqualified based upon a conflict of

---

[10]The prosecuting attorney later determined that he too had a conflict, insofar as the Commission set his budget, and he requested the appointment of a special prosecutor to represent the Commission.

13

interest arising from the firm representing both the Commission and Commissioners Teets

and Keplinger in the appeal. This Court remanded the case to the circuit court to resolve the

conflict of interest issue. By order entered February 19, 2015, the circuit court found a

conflict of interest did exist and that Steptoe & Johnson was disqualified. In addition, the

circuit court ordered Steptoe & Johnson to refund $26,528.80 of the fees it had received from

the Commission. This appeal followed.

## II.

## STANDARD OF REVIEW

It is well established that

> [i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

To the extent that our resolution of this case requires consideration of statutory provisions,

our review is *de novo*. "Where the issue on an appeal from the circuit court is clearly a

question of law or involving an interpretation of a statute, we apply a *de novo* standard of

review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

With these standards in mind, we will address the dispositive issue presented in this appeal.

14

## III.

## DISCUSSION

In this appeal multiple issues have been raised by three separate petitioners. However, it is necessary for us to address only one dispositive issue, *i.e.*, whether W. Va. Code § 7-15-18 applies in this case to the exclusion of the Open Government Proceedings Act, W. Va. Code § 6-9A-1 *et seq.*, and W. Va. Code § 7-1-2.

Our resolution of this matter requires consideration of various statutory provisions. Thus, at the outset, we note that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). To glean legislative intent, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). In other words, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). Conversely, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

15

The circuit court concluded, in its order of August 8, 2014, that the Commission violated the Open Government Proceedings Act, W. Va. Code § 6-9A-1 *et seq.*, as well as W. Va. Code § 7-1-2, by holding meetings for which it did not provide adequate notice to the public regarding the issues to be discussed and/or voted upon during said meetings. Specifically, the court found that the Commission's practice of having a "Standard Agenda" and separate "Appointments Sheet" is inherently deceptive. The circuit court took issue with the "ever-changing nature" of the "Appointments Sheet" considering matters were added to the sheet up until the day of the meetings, which the court found to create an unreliable record of the business that was to be transacted during Commission meetings.[11] The circuit court additionally concluded that the "Appointments Sheet" lacked adequate descriptions of the business to be addressed by the Commission and therefore failed to inform the public of that business.

The circuit court also recognized that W. Va. Code § 7-1-2 requires a county commission to provide notice of special sessions that include the purpose for which a special session will be held. Observing that the Commission failed to adopt a schedule of regular sessions, the circuit court concluded that the Commission meetings at issue were special

---

[11]It should be noted that the Open Government Act provides that "persons who desire to address the governing body may not be required to register to address the body more than fifteen minutes prior to time the scheduled meeting is to commence." W. Va. Code § 6-9A-3(c) (2013).

16

sessions that failed to comply with W. Va. Code § 7-1-2 insofar as the public was not properly notified of the purpose of the meetings.[12] Therefore, the circuit court found that the Commission was without jurisdiction to decide the challenged issues.

Turning to the relevant statutes, we note that the Open Government Proceedings Act expressly provides, in part, that "[e]ach governing body shall promulgate rules by which the date, time, place and agenda[13] of all regularly scheduled meetings and the date, time, place and purpose of all special meetings are made available, in advance, to the public and news media . . . ."  W. Va. Code § 6-9A-3(d) (2013) (footnote added).[14] Clearly, and in plain and unambiguous language, the Act requires advanced notice to the public and news media of the "date, time, place and agenda of all regularly scheduled meetings" and of the "date, time, place and purpose of all special meetings."  W. Va. Code

---

[12]The Commission disputes the circuit court's finding that its meetings were special sessions.  Due to the manner in which we resolve this appeal, it is unnecessary for us to settle this issue.

[13]The common, ordinary and accepted meaning of the term "agenda" is "[a] list of things to be done, as items to be discussed at a meeting."  Black's Law Dictionary 63 (7th ed. 1999). *See* Syl. pt. 1, *Miners in Gen. Grp. v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941) ("In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used."), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982).

[14]Although an earlier version of W. Va. Code § 6-9A-3 was in place during some of the Commission's meetings described in this opinion, the amendments thereto, which became effective on July 12, 2013, did not change the provisions of that code section that are relevant to this appeal.  Consequently, we cite to the current code.

§ 6-9A-3(d) [15]


        Similarly, W. Va. Code § 7-1-2 requires at least two days notice before a county commission holds a special session:

> The county court [county commission] of each county shall hold four regular sessions in each year at the courthouse thereof, at such times as may be fixed upon and entered of record by the court. It may also hold special sessions, whenever the public interests may require it, to be called by the president with the concurrence of at least one other commissioner; and the commissioner, if any, not concurring therein, must have at least twenty-four hours' notice of the time appointed for such special session. *A notice of the time of such special session, and of the purpose for which it will be held, shall be posted by the clerk of the court, at the front door of the courthouse of the county, at least two days before such session is to be held*. If such commissioner, after due notice thereof, shall willfully fail to attend such special session, he shall forfeit not less than five nor more than twenty dollars.

(Emphasis added).

---

[15]The invalidation of actions taken by a governing body is an available remedy for the failure of such body to comply with the notice requirements of the Open Government Proceedings Act:

> Upon petition by any adversely affected party any court of competent jurisdiction may invalidate any action taken at any meeting for which notice did not comply with the requirements of this section.

W. Va. Code § 6-9A-3(i) (2013).

Although the foregoing provisions of the Open Government Proceedings Act and W. Va. Code § 7-1-2 plainly require a county commission to provide notice of meetings and/or special sessions, the Commission and Commissioners Teets and Keplinger claim they were excused from these requirements in this instance because the challenged actions they took were governed by the Emergency Ambulance Service Act of 1975 ("Emergency Ambulance Act"), W. Va. Code § 7-15-1 *et seq.* We agree.

> In adopting the Emergency Ambulance Act, the Legislature expressly declared:
>
> (a) That a significant part of the population of this State does not have adequate emergency ambulance service;
>
> (b) That the establishment and maintenance of adequate emergency ambulance systems for the entire State is necessary to promote the health and welfare of the citizens and residents of this State;
>
> (c) That emergency ambulance service is not likely to become available to all the citizens and residents of this State unless specific requirements therefor are provided by law;
>
> (d) *That emergency ambulance service is a public purpose and a responsibility of government for which public money may be spent*; and
>
> (e) *This article is enacted in view of these findings and shall be liberally construed in the light thereof.*

W. Va. Code § 7-15-2 (1975) (emphasis added). The foregoing code section plainly expresses the Legislature's view that establishing and maintaining adequate emergency services is a necessity that is unlikely to become available absent "specific requirements

19

therefor." W. Va. Code § 7-15-2(c). Indeed, the Legislature therein expressly provides that public money may be spent to provide such services. Moreover, W. Va. Code § 7-15-2 provides that article 15 "shall be liberally construed" in light of the expressed legislative findings, thereby further demonstrating the vast importance placed by the Legislature upon the provision of emergency services to "all the citizens and residents of this State." W. Va. Code § 7-15-2(c), (e).

Significant to our resolution of the instant case, the Emergency Ambulance Act further declares, in pertinent part, that

> [t]his article shall constitute full and complete authority for the provision of emergency ambulance service within a county by a county commission and for the creation of any authority and carrying out the powers and duties of any such authority. The provisions of this article shall be liberally construed to accomplish its purpose and *no procedure or proceedings, notices, consents or approvals shall be required in connection therewith except as may be prescribed by this article*.

W. Va. Code § 7-15-18 (emphasis added). There are three notable provisions of W. Va. Code § 7-15-18 relevant to our resolution of this case. First, the statutory provision expressly announces that the Emergency Ambulance Act "shall constitute full and complete authority for the provision of emergency ambulance service within a county by a county commission." Thus, because the Act identifies itself as the "full and complete authority" for the provision of emergency ambulance service as described therein, it plainly is intended to be the only

20

authority relied upon by a county commission in undertaking its duty to provide such ambulance service. W. Va. Code § 7-15-18. Moreover, W. Va. Code § 7-15-18 repeats, and thereby emphasizes, the Legislature's earlier proclamation regarding this article, which is first made in the declaration of policy found at W. Va. Code § 7-15-2, that it "shall be liberally construed."

Finally, the text we have emphasized in the above quote of W. Va. Code § 7-15-18 makes clear, in plain language, that "no procedure or proceedings, notices, consents or approvals shall be required in connection [with]" the Emergency Ambulance Act. It is significant that this provision uses the phrase "in connection with" to identify the types of actions for which no notice, proceeding, etc., shall be required. The phrase "in connection with" has been given broad meaning by this Court. *See Elk Run Coal Co., Inc. v. Canopius U.S. Ins., Inc.*, 235 W. Va. 513, 521 n.10, 775 S.E.2d 65, 73 n.10 (2015) ("Terms such as 'relating to' and 'in connection with' have been afforded exceptionally broad meaning by this Court.").[16] In fact, it has been determined that the phrase signals only that one thing must

---

[16]Other courts also have broadly interpreted the term "in connection with." *See Atain Specialty Ins. Co. v. Greer*, No. 15-CV-422-JPG-PMF, 2016 WL 1569892, at *3 (S.D. Ill. Apr. 19, 2016) ("'In connection with' is . . . broad and does not necessarily even connote a causal connection as long as some significant connection exists."); *Galilea, LLC v. AGCS Marine Ins. Co.*, No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016) (commenting, in the context of an arbitration clause, that "if the clause uses the phrase 'arising in connection with,' it is broadly interpreted"); *Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC*, 106 F. Supp. 3d 316, 329 (E.D.N.Y. 2015) ("[C]ourts have found that
(continued...)

21

"bear a logical relationship to" another. *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 147, 690 S.E.2d 322, 341 (2009).

Applying the plain terms of W. Va. Code § 7-15-18, the Commission's imposition of the Ambulance Fee and its purchase of the Baker building could be accomplished without any "procedure or proceedings, notices, consents or approvals" so long as the Ambulance Fee and the purchase of the Baker building bore a logical relationship to the Commission's provision of emergency ambulance service.

Without question the Commission's imposition of the Ambulance Fee bears a logical relationship to the Commission's provision of emergency ambulance service. In

---

[16](...continued)
the plain meaning of '[i]n connection with' is 'related to.'"); *Bank of Am., N.A. v. Klein*, No. 3:10CV987 JBA, 2013 WL 1296478, at *3 (D. Conn. Mar. 27, 2013) ("[U]nder New York law the term 'in connection with' is meant to have a broad meaning. Thus, the Court finds that the meaning of the term 'in connection with' is unambiguous and that if any of the matters for which Plaintiff seeks to recover attorneys' fees was somehow related to or connected with the enforcement of the Agrippa Guaranty, such fees are properly recoverable in this action."); *In re Lehman Bros. Holdings Inc*., 469 B.R. 415, 442 (Bankr. S.D.N.Y. 2012) ("It is proper to construe the phrase 'in connection with' broadly to mean 'related to.'"); *Smith v. Lucent Techs., Inc*., No. CIV. A. 02-0481, 2004 WL 515769, at *8 (E.D. La. Mar. 16, 2004) (noting that the terms "related to" and "in connection with" are broader terms "not necessarily tied to the concept of a causal connection"); *In re Interbulk, Ltd.*, 240 B.R. 195, 202 (Bankr. S.D.N.Y. 1999) ("A natural reading of 'in connection with' suggests a broader meaning similar to 'related to.'"); *Jackson v. Lajaunie*, 270 So. 2d 859, 864 (La. 1972) (reasoning that the term "in connection with" is broader than "arising out of" and is equivalent to the terms "linked," "associated with," or "related to").

fact, the Commission's authorization to impose such a fee comes from the Emergency

Ambulance Service Act itself:

> A county commission may, by ordinance, impose upon and collect from the users of emergency ambulance service within the county a special service fee, which shall be known as the "special emergency ambulance service fee." The proceeds from the imposition and collection of any special service fee shall be deposited in a special fund and used only to pay reasonable and necessary expenses actually incurred and the cost of buildings and equipment used in providing emergency ambulance service to residents of the county. The proceeds may be used to pay for, in whole or in part, the establishment, maintenance and operation of an authority, as provided for in this article: Provided, That an ambulance company or authority receiving funds from the special emergency ambulance fees collected pursuant to this section may not be precluded from making nonemergency transports.

W. Va. Code § 7-15-17 (1999).

Likewise, the evidence presented in this case establishes that the purchase of the Baker building bears a logical relationship to the provision of emergency ambulance service. The Baker building was specifically designed and constructed to house an ambulance service. It will accommodate ambulances and other emergency medical service vehicles, has sleeping quarters for emergency staff, and is climate controlled to facilitate the preservation of medications used on ambulances that are required to be stored within a certain range of temperatures. In addition, the building is centrally located within Hardy County and is, therefore, ideal for responding to emergencies throughout the county.

Accordingly, the Commission's purchase of the Baker building was "in connection with" the provision of emergency ambulance service as contemplated in the Emergency Ambulance Act.

The Hardy County Citizens argue that the Emergency Ambulance Act does not provide authority supporting the Commission's herein challenged actions insofar as W. Va. Code § 7-15-4 (1975) states, in part, that

> the county commission *shall* cause emergency ambulance service to be made available to all the residents of the county *where such service is not otherwise available*: Provided, however, That *the duty imposed* upon county commissions by this article *shall not be construed* in such manner as *to impose a duty to cause such emergency ambulance service to be provided unless* the commission shall make an affirmative determination that *there are funds available therefor* by the inclusion of a projected expenditure for such purpose in the current levy estimate, and in the event that such county commission shall make such determination the commission shall not be under a duty to cause such service to be provided beyond a level commensurate with the amount of funds actually available for such purpose.

(Emphasis added). The Hardy County Citizens contend that, contrary to the foregoing provision, ambulance service was otherwise available in Hardy County and funds had not been budgeted by the Commission in 2014 for ambulance service.

The Hardy County citizens misinterpret the relevance of W. Va. Code § 7-15-4 to the instant matter. By using the word "shall," W. Va. Code § 7-15-4 imposes a mandatory

24

duty upon county commissions to "cause emergency ambulance service to be made available to all the residents of the county where such service is not otherwise available." *See* Syl. pt. 1, *E.H. v. Matin*, 201 W. Va. 463, 498 S.E.2d 35 (1997) ("'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W. Va. 445, 300 S.E.2d 86 (1982)."). The legislature tempered this mandatory duty to provide emergency ambulance service by clarifying that this duty would not be imposed unless certain conditions were met, such as, *inter alia,* the availability of funds: "this article shall not be construed in such manner as to impose a duty to cause such emergency ambulance service to be provided unless the commission shall make an affirmative determination that there are funds available therefor . . . ."

In this matter, the Commission was not fulfilling its mandatory duty to provide emergency ambulance service under W. Va. Code § 7-15-4. Rather, the Commission was exercising its *discretionary authority* to impose a special emergency ambulance service fee pursuant to W. Va. Code § 7-15-17, which provides that "[a] county commission *may*, by ordinance, impose upon and collect from the users of emergency ambulance service within the county a special service fee. . . ." (Emphasis added). By using the term "may" in W. Va. Code § 7-15-17, the legislature clearly signaled that it was affording county commissions

25

discretion in this area. *See Weimer v. Sanders*, 232 W. Va. 367, 374, 752 S.E.2d 398, 405 (2013) ("As a general rule, the word 'may' is afforded a permissive connotation, which renders the referenced act discretionary, rather than mandatory, in nature."); *State v. Hedrick*, 204 W. Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion." (citations omitted)). Accordingly, while a county commission is not under a mandatory duty to provide emergency ambulance service that exceeds its available funds, the Emergency Ambulance Act clearly does not prohibit a county from exercising its discretion to provide a higher level of emergency ambulance service than required by the mandatory duty.[17]

Our finding that the Commission's imposition of the Emergency Ambulance fee and its purchase of the Baker building were done "in connection" with the Commission's provision of emergency ambulance service, and therefore complies with W. Va. Code § 7-15-18, does not fully resolve this case. Rather, we have merely established that there is a conflict between the provisions of the Open Government Proceedings Act and W. Va. Code § 7-1-2 on the one hand, and the Emergency Ambulance Act on the other. This conflict is

---

[17]The Commission avers that, while emergency ambulance service was *available* throughout Hardy County prior to its imposition of the Emergency Service Fee and its purchase of the Baker building, such service was not always *reliable* insofar as limited emergency resources resulted in delayed response times and scratched calls in remote areas of the County. The herein challenged actions of the Commission sought to remedy these deficits.

resolved by applying the more specific statute: "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 6, *Carvey v. West Virginia State Bd. of Educ.*, 206 W. Va. 720, 527 S.E.2d 831 (1999) (internal quotations and citations omitted). *See also In re Chevie V.*, 226 W. Va. 363, 371, 700 S.E.2d 815, 823 (2010) ("As a rule, when both a specific and a general statute apply to a given case, the *specific* statute governs.").

Because the Emergency Ambulance Act applies specifically to the circumstances herein presented, *i.e.* the Commission's provision of emergency ambulance service to the citizens and residents of Hardy County, it governs over the Open Government Proceedings Act, which, in this context, is more general in setting forth requirements and procedures for open proceedings held by public agencies of this state. It also is noteworthy that the Open Government Proceedings Act itself recognizes exceptions to its mandate for open meetings: "*Except as expressly and specifically otherwise provided by law, whether heretofore or hereinafter enacted*, . . . all meetings of any governing body shall be open to the public." W. Va. Code § 6-9A-3(a) (emphasis added). Thus, because the Emergency Ambulance Act expressly and specifically provides that the Commission is not required to provide a proceeding or notice to the public, it is a recognized exception to the open meeting requirements of the Open Government Proceedings Act.

27

Correspondingly, W. Va. Code § 7-1-2, which is included in a series of statutes that are titled "County Commissions Generally" and sets forth standard guidelines pertaining to general and special sessions held by the various West Virginia county commissions, is more general under the present circumstances where the actions taken by the Commission are expressly governed by the Emergency Ambulance Act. Therefore, the Emergency Ambulance Act, as the more specific statute, takes precedence over W. Va. Code § 7-1-2.

Based upon the foregoing analysis, we now expressly hold that, pursuant to W. Va. Code § 7-15-18, the provisions of the Emergency Ambulance Service Act of 1975, W. Va. Code § 7-15-1 *et seq.,* shall be liberally construed to accomplish its purpose and no procedure or proceedings, notices, consents or approvals shall be required in connection therewith except as may be prescribed therein. Accordingly, a county commission taking action in connection with the Emergency Ambulance Service Act of 1975 is not required to comply with the open meeting and/or notice requirements of the Open Government Proceedings Act, W. Va. Code § 6-9A-1 *et seq.*, or W. Va. Code § 7-1-2.

Applying the foregoing holding to the case *sub judice*, we conclude that the circuit court erred by finding that the Commission violated the Open Government Proceedings Act, W. Va. Code § 6-9A-1 *et seq.*, and W. Va. Code § 7-1-2, by holding meetings for which it did not provide adequate notice to the public regarding the imposition

of an Ambulance Fee and the purchase of the Baker building. Because these actions by the Commission were carried out in connection with the provision of emergency ambulance service, and were executed under the authority of the Emergency Ambulance Service Act, the Commission was not required to comply with the Open Government Proceedings Act or W. Va. Code § 7-1-2. Accordingly, the circuit court's order of August 8, 2014, is reversed.

Because we reverse the circuit court's finding that the Commission and Commissioners Teets and Keplinger violated the Open Government Proceedings Act and W. Va. Code § 7-1-2, we summarily reverse the circuit court's additional rulings that were based upon its finding of such violation. Specifically, we reverse the circuit court's order of October 10, 2014, that permanently enjoined the County Commission from conducting future proceedings pertaining to the purchase of the Baker building and the implementation of the Emergency Ambulance Fee; that granted the Hardy County Citizens' motion for attorney's fees and expenses, and awarded them $112,000.00, plus interest; and that imposed personal liability upon Commissioners Teets and Keplinger. In addition, we reverse the circuit court's order of February 19, 2015, that required the law firm of Steptoe & Johnson to refund to the Commission $26,582.80 in attorney's fees.[18]

---

[18]Additional issues raised in this appeal, such as the improper exclusion of evidence and the circuit court's failure to join parties, need not be addressed in light of the manner in which this case has been resolved.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, the August 8, 2014, October 10, 2014, and February 19, 2015, orders of the Circuit Court of Hardy County are reversed.

Reversed.

30