IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-0480

_____

STATE OF WEST VIRGINIA EX REL. GABRIEL DEVONO AND
THE BOARD OF EDUCATION OF RANDOLPH COUNTY,
Petitioners,

v.

THE HONORABLE DAVID H. WILMOTH, JUDGE OF THE CIRCUIT COURT OF
RANDOLPH COUNTY, SHERMAN ARBOGAST, AND MARLENE ARBOGAST,
Respondents.

_____

PETITION FOR A WRIT OF PROHIBITION

WRIT GRANTED, IN PART, AND DENIED, IN PART
_____

Submitted: April 19, 2023
Filed: June 15, 2023

Susan L. Deniker, Esq.                    James R. Fox, Esq.
Jeffrey M. Cropp, Esq.                    Fox Law Office, PLLC
Steptoe & Johnson PLLC                    Hurricane, West Virginia
Bridgeport, West Virginia                 Attorney for Respondents Sherman
Attorneys for Petitioners                 Arbogast and Marlene Arbogast

JUSTICE HUTCHISON delivered the Opinion of the Court.
CHIEF JUSTICE WALKER and JUSTICE ARMSTEAD concur, in part, and dissent, in part, and reserve the right to file separate opinions.
JUSTICE BUNN, deeming herself disqualified, did not participate in the decision in this case.
JUDGE THOMAS E. SCARR, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

2.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

3.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a

i

discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

4. ""The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association*, 143 W.Va. 674, 104 S.E.2d 320 (1958).' Syl. Pt. 1, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984)." Syl. Pt. 10, *State ex rel. Miller v. Reed*, 203 W. Va. 673, 510 S.E.2d 507 (1998).

5. "A plaintiff may, as an alternative to filing a grievance with the West Virginia Public Employees Grievance Board, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq*." Syl. Pt. 9, *Weimer v. Sanders*, 232 W. Va. 367, 752 S.E.2d 398 (2013).

6. "In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va. Code § 5-11-1 *et seq*. (1979), the plaintiff must offer proof of the following:

(1) That the plaintiff is a member of a protected class.

(2) That the employer made an adverse decision concerning the plaintiff.

ii

(3) But for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 3, *Conaway v. Eastern Associated Coal Corp.*, 178 W. Va. 164, 358 S.E.2d 423 (1996).

7. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).

8. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

9. The filing of a grievance with the West Virginia Public Employees Grievance Board for an alleged violation of the Whistle-blower Law is permissive and the failure to do so does not preclude an employee from initiating an action in circuit court to enforce rights provided by West Virginia Code § 6C-1-3 (2020).

10. "Under *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), public employees are entitled to be protected from firings, demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights. However, *Pickering*

recognized that the State, as an employer, also has an interest in the efficient and orderly operation of its affairs that must be balanced with the public employees' right to free speech, which is not absolute." Syl. Pt. 3, *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983).

11. "In a suit under 42 U.S.C. § 1983, where the plaintiff claims that he was discharged for exercising his First Amendment right of free speech, the burden is initially upon the plaintiff to show: (1) that his conduct was constitutionally protected; and (2) that his conduct was a substantial or motivating factor for his discharge. His employer may defeat the claim by showing that the same decision would have been reached even in the absence of the protected conduct." Syl. Pt. 4, *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983).

12. "The circuit courts of West Virginia, being courts of general jurisdiction, have original jurisdiction to hear and resolve claims under Title 42, U.S.C.A. § 1983 (1979)." Syl. Pt. 3, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

HUTCHISON, Justice:

Petitioners Gabriel Devono and the Board of Education of Randolph County invoke this Court's original jurisdiction and seek a writ of prohibition to prevent the Honorable David H. Wilmoth, Judge of the Circuit Court of Randolph County, from enforcing a May 5, 2022, order denying their motion to dismiss certain claims set forth in an amended complaint alleging wrongful termination of employment filed by the respondents, Marlene and Sherman Arbogast. The petitioners contend that certain claims should have been dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the West Virginia Rules of Civil Procedure because Mrs. Arbogast failed to exhaust her administrative remedies through the West Virginia Public Employees Grievance Procedure, West Virginia Code §§ 6C-2-1 to -8. The petitioners further assert that other claims were subject to dismissal pursuant to Rule 12(b)(6) for failure to set forth a claim upon which relief can be granted.[1] For the reasons set forth below, we find that some of the claims asserted by the respondents should have been dismissed, but that others are not

---

[1] Rule 12(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part:

> *How presented.* – Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
> (1) lack of jurisdiction over the subject matter,
> . . . .
> (6) failure to state a claim upon which relief can be granted[.]

1

barred by the exhaustion rule and have been sufficiently pled to go forward. Accordingly, the requested writ is granted, in part, and denied, in part.

## I. Facts and Procedural Background

The underlying civil action arose as a result of the termination of Mrs. Arbogast's employment as cafeteria manager and "head cook" at the Beverly Elementary School in Randolph County. The amended complaint filed on August 18, 2021,[2] indicates that Mrs. Arbogast learned during her employment that students in the pre-K program at the school, which included her son, had been confined to a closet and mistreated by the pre-K teacher. According to Mrs. Arbogast, the pre-K teacher "engaged in multiple acts of physical, emotional, and mental abuse towards her students." Mrs. Arbogast alleges that when she reported this information to Mr. Devono, who was then serving as superintendent of the Board of Education of Randolph County,[3] he refused to investigate the matter and, instead, attempted to "cover-up" the abuse. Mrs. Arbogast claims that Mr. Devono then took adverse actions against her and ultimately caused her employment to be terminated.

In her amended complaint, Mrs. Arbogast alleges eight claims. Counts one and two allege retaliatory discharge and constructive retaliatory discharge, respectively, in violation of the West Virginia Human Rights Act ("Human Rights Act"), West Virginia

---

[2] The initial complaint was filed on February 1, 2021.

[3] The record indicates that Mr. Devono is now retired.

Code §§ 5-11-1 to -20. Count three alleges wrongful discharge in violation of the Whistle-blower Law, West Virginia Code §§ 6C-1-1 to -8. Counts four and five allege that Mrs. Arbogast's constitutional rights were violated by the petitioners. Count six alleges tortious interference with Mrs. Arbogast's part-time employment with U-Haul and specifically, asserts that Mr. Devono "maliciously, willfully and in bad faith caused [Mrs.] Arbogast's termination of her employment with U-Haul." Count seven alleges tortious interference with Mrs. Arbogast's medical care and asserts that Mr. Devono sought disclosure of her confidential medical information with the intent of obtaining embarrassing information that he could use for harassment and as a basis for terminating her employment. Finally, count eight is a claim for punitive damages. The complaint also sets forth derivative claims for loss of consortium on behalf of Mr. Arbogast.

On September 1, 2021, the petitioners filed a motion to dismiss, seeking dismissal of counts one through five and count seven pursuant to Rule 12(b)(1). The petitioners argued that the circuit court lacked subject matter jurisdiction because Mrs. Arbogast did not exhaust her administrative remedies.[4] The petitioners also argued that the claims asserting violations of the Human Rights Act and the claim alleging tortious

---

[4] The petitioners also sought dismissal of count eight, the punitive damages claim. In the May 5, 2022, order, the circuit court deferred ruling on that issue, finding that additional consideration and review was required. The petitioners are not seeking dismissal of the punitive damages claim through their petition for a writ of prohibition. With regard to count six, which alleges tortious inference with Mrs. Arbogast's employment with U-Haul, the petitioners did not seek dismissal of that claim below, nor do they seek dismissal of that claim in their petition for a writ of prohibition.

interference with Mrs. Arbogast's medical care were subject to dismissal pursuant to Rule 12(b)(6) for failure to set forth claims upon which relief could be granted. A hearing was held on the motion on December 9, 2021, and by order entered May 5, 2022, the circuit court denied the motion. The circuit court found that Mrs. Arbogast did not have to file a grievance as a jurisdictional prerequisite; that she had asserted viable claims under the Human Rights Act; and that she had set forth sufficient factual allegations to support her claims. Following entry of that order, the petitioners filed their petition for a writ of prohibition with this Court.

## II. Standard for Issuance of Writ

This Court has recognized that when a motion to dismiss has been denied by a circuit court, a party may seek relief through a petition for a writ of prohibition. *See State ex rel. Skyline Corp. v. Sweeney*, 233 W. Va. 37, 40, 754 S.E.2d 723, 726 (2014) ("When the request for extraordinary relief concerns a circuit court's denial of a motion to dismiss, we consider the matter as a petition for a writ of prohibition."). However, "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). We have made clear that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds

its legitimate powers. W. Va. Code, 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). We have further explained that

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With these standards in mind, we consider the parties' arguments.

### III. Discussion

The petitioners first contend that they are entitled to a writ of prohibition because the circuit court lacks subject matter jurisdiction over several of the counts set forth in the amended complaint as a result of Mrs. Arbogast's failure to exhaust her administrative remedies. *See* W. Va. R. Civ. P. 12(b)(1). They rely upon "'"[t]he general rule . . . that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative

5

body, and such remedy must be exhausted before the courts will act." Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association*, 143 W.Va. 674, 104 S.E.2d 320 (1958).' Syl. Pt. 1, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984)." Syl. Pt. 10, in part, *State ex rel. Miller v. Reed*, 203 W. Va. 673, 510 S.E.2d 507 (1998). As a public school employee,[5] Mrs. Arbogast had access to the West Virginia Public Employees Grievance Procedure. The grievance procedure provides for an administrative "resolution of employment grievances raised by the public employees of the State of West Virginia[.]" W. Va. Code § 6C-2-1(a) (2023).[6] Under West Virginia Code § 6C-2-2(i)(1), a "grievance" means

> a claim by an employee alleging a violation, a misapplication or a misinterpretation of the statutes, policies, rules or written agreements applicable to the employee including:
> (i) Any violation, misapplication or misinterpretation regarding compensation, hours, terms and conditions of employment, employment status or discrimination;
> (ii) Any discriminatory or otherwise aggrieved application of unwritten policies or practices of his or her employer;
> (iii) Any specifically identified incident of harassment;
> (iv) Any specifically identified incident of favoritism; or
> (v) Any action, policy, or practice constituting a substantial detriment to or interference with the effective job performance of the employee or the health and safety of the employee.

---

[5] *See* W. Va. Code § 6C-2-2 (2023) (defining "employee" and "employer" under the West Virginia Public Employees Grievance Procedure). We cite to the current version of the statute because the differences in the applicable statutory language between the current and prior version are merely stylistic. *See* W. Va. Code § 6C-2-2 (2008).

[6] We cite to the current version of this statute because the language quoted is identical to that in the prior version. *See* W. Va. Code § 6C-2-1(a) (2008).

6

The petitioners contend that Mrs. Arbogast's claims fall within the definition of "grievance" set forth in West Virginia Code § 6C-2-2(i)(1) and because she failed to challenge the termination of her employment by filing a grievance, she may not seek relief from the circuit court. Alternatively, the petitioners argue that some of the counts in the amended complaint should have been dismissed for failure to state a claim upon which relief can be granted. *See* W. Va. R. Civ. P. 12(b)(6). Given that the petitioners' arguments are specific to the nature of the claim asserted, our analysis is guided by the counts in the amended complaint, which we will consider separately below.

### A. *Human Rights Act claims*

As set forth above, counts one and two in the amended complaint allege retaliatory discharge and constructive retaliatory discharge, respectively, in violation of the Human Rights Act. Specifically, the Arbogasts allege in count one that Mr. Devono "maliciously, wantonly and in bad faith, and in violation of the West Virginia Human Rights Act, solicited the help of others to take adverse employment actions against Marlene Arbogast and to create bogus reasons for her discharge in retaliation for her reporting the abusive misconduct." Count two of the amended complaint asserts:

> The Defendants [petitioners herein] violated the West Virginia Human Rights Act and other substantial public policy in retaliating against [Mrs. Arbogast], creating bogus employment fractions, suspensions and threatening to terminate [Mrs. Arbogast's] employment as a reprisal and in retaliation for disclosing the abuse and to impede and obstruct her truthful testimony.

7

. . . .

> The repeated retaliation, reprisals, harassment, bullying and intimidation violated the West Virginia Humans Rights Act, and were so intolerable that Marlene Arbogast had no alternative except to leave her employment to prevent further injuries and damages.

The petitioners acknowledge that the exhaustion rule does not apply to alleged violations of the Human Rights Act.  As this Court has held, "[a] plaintiff may, as an alternative to filing a grievance with the West Virginia Public Employees Grievance Board, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq*."  Syl. Pt. 9, *Weimer v. Sanders*, 232 W. Va. 367, 752 S.E.2d 398 (2013).  In so holding, this Court reasoned that

> if a claimant is not required to maintain an action before the Human Rights Commission prior to filing a claim in the circuit court,[7] the claimant is, likewise, not required to file a grievance with the Grievance Board before filing a claim pursuant to the WVHRA in the circuit court.

*Id.* at 375, 752 S.E.2d at 406 (*footnote added*).[8]

---

[7] *See* Syl. Pt. 1, *Price v. Boone Cty. Ambulance Auth.*, 175 W. Va. 676, 337 S.E.2d 913 (1985) ("A plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act.).

[8] There are other recognized exceptions to the exhaustion rule.  *See, e.g.,* Syl. Pt. 3, *Beicher v. WV Univ. at Parkersburg*, 226 W. Va. 321, 700 S.E.2d 532 (2010) ("Pursuant to *W.Va.Code*, 21-5-12(a) (1975), a person whose wages have not been paid in accord with the West Virginia Wage Payment and Collection Act may initiate a claim for the unpaid wages either through the administrative remedies provided under the Act or by filing a complaint for the unpaid wages directly in circuit court.").  This Court has also held that "the rule which requires the exhaustion of administrative remedies is inapplicable where

8

The petitioners argue that although Mrs. Arbogast could pursue a claim in the circuit court for a violation of the Human Rights Act even though she never filed a grievance, these two counts should have nonetheless been dismissed because there is no allegation in the amended complaint that Mrs. Arbogast is a member of a protected class as defined by the Human Rights Act. Absent such an allegation, the petitioners contend that the Arbogasts have failed to set forth a claim under the Human Rights Act upon which relief can be granted requiring dismissal of these claims under Rule 12(b)(6). We agree.

"The Human Rights Act declares it unlawful for an employer to 'discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[.]'" *Burke v. Wetzel Cnty. Comm'n,* 240 W. Va. 709, 722, 815 S.E.2d 520, 533 (2018), (citing W. Va. Code § 5-11-9(1) (2017)). Under the Human Rights Act, "'[d]iscrimination' means to 'exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status[.]'" *Burke*, 240 W. Va. at 722, 815 S.E.2d at 533, (citing W.Va. Code § 5-11-3(h) (2013)). This Court has held that

> [i]n order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act,

---

no administrative remedy is provided by law." *Duarelle*, 143 W. Va. at 674, 104 S.E.2d at 322, syl. pt. 2. However, "[t]he rule of exhausting administrative remedies before actions in courts are instituted is applicable, even though the administrative agency cannot award damages, if the matter is within the jurisdiction of the agency. In any event, damages can always be obtained in the courts after the administrative procedures have been followed, if warranted." *Bank of Wheeling v. Morris Plan Bank & Trust Co.,* 155 W. Va. 245, 249, 183 S.E.2d 692, 695 (1971) (citations omitted).

W.Va. Code § 5-11-1 *et seq.* (1979), the plaintiff must offer proof of the following:
(1) That the plaintiff is a member of a protected class.
(2) That the employer made an adverse decision concerning the plaintiff.
(3) But for the plaintiff's protected status, the adverse decision would not have been made.

Syl. Pt. 3, *Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 358 S.E.2d 423 (1996).

In addition, this Court has declared that

to be covered under the Human Rights Act, prohibited actions must be perpetrated against a member of one of the specific protected classes identified therein. Although W. Va. Code § 5-11-9(7)(A) does not expressly state that it applies only to members of a protected class, this limitation is understood because W. Va. Code § 5-11-9 expressly proscribes "unlawful *discriminatory* practices." (Emphasis added). The meaning ascribed to the term "discriminate" or "discrimination" by the Human Rights Act is "to exclude from, or fail or refuse to extend to, a person equal opportunities *because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status* and includes to separate or segregate." W. Va. Code § 5-11-3(h) (1998) (Repl.Vol.2006) (emphasis added).

*Michael v. Appalachian Heating, LLC*, 226 W.Va. 394, 402 n.16, 701 S.E.2d 116, 124 n. 16 (2010).

As the petitioners assert, there is no allegation in the amended complaint that Mrs. Arbogast is a member of a protected class—an essential element of proof required to set forth a prima facie case of employment discrimination under the Human Rights Act. With respect to Rule 12(b)(6), we have explained that

the policy of the rule is . . . to decide cases upon their merits, and if the complaint states a claim upon which relief

10

> can be granted under any legal theory, a motion under Rule
> 12(b)(6) must be denied. *However, essential material facts*
> *must appear on the face of the complaint. The complaint must*
> *set forth enough information to outline the elements of a claim*
> *or permit inferences to be drawn that these elements exist.*

*Burke*, 240 W. Va. at 721, 815 S.E.2d at 532 (footnotes, additional citations, and internal quotations omitted) (emphasis added). Here, the Arbogasts have failed to allege an essential material fact—that Mrs. Arbogast is a member of a protected class. Therefore, we find that the circuit court should have granted the petitioners' motion to dismiss counts one and two of the amended complaint under Rule 12(b)(6), and, in failing to do so, it exceeded its legitimate powers. Accordingly, we grant the requested writ with respect to these claims. The writ is also granted with respect to Mr. Arbogast's loss of consortium claims pertaining to these two counts. As we have explained, "the derivative claim for loss of consortium is a mere incident to a cause of action and not the subject of an action itself." *State ex rel. Small v. Clawges*, 231 W. Va. 301, 310, 745 S.E.2d 192, 201 (2013) (internal quotations and citation omitted). Therefore, because Mrs. Arbogast has not sufficiently set forth claims for wrongful discharge under the Human Rights Act upon which relief can be granted, neither has Mr. Arbogast.

### B.  *Whistle-blower claim*

Count three of the amended complaint alleges that Mrs. Arbogast was wrongfully discharged in violation of the Whistle-blower Law, West Virginia Code §§ 6C-1-1 to -8. Specifically, it is asserted that Mr. Devono "engaged in a pattern of conduct to cover-up the mistreatment and abuse of students and to create bogus reasons to discharge

11

Marlene Arbogast as punishment for informing him of the wrongdoing of [the pre-K teacher]." West Virginia Code § 6C-1-3(a) (2020) provides that

> [n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or privileges of employment because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report, or is about to report, verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste.

The petitioners contend that the exhaustion rule applies to this claim and, therefore, it should have been dismissed pursuant to Rule 12(b)(1) because Mrs. Arbogast did not file a grievance. However, West Virginia Code § 6C-1-4(a) (2020) expressly provides that "[a] person who alleges that he or she is a victim of a violation of this article may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within two years after the occurrence of the alleged violation." The statute further provides that "[a]ny employee covered by the civil service system who has suffered a retaliatory action as a result of being a whistle-blower *may* pursue a grievance under the West Virginia Public Employees Grievance Procedure." *Id.* § 6C-1-4(e) (emphasis added).

This Court has long held that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). To that end, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the

12

courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). West Virginia Code § 6C-1-4(a) clearly and unambiguously provides that a person claiming to be a victim of retaliatory action as a result of being a whistle-blower may institute a civil action in a court of competent jurisdiction.

While the statute also provides for the filing of a grievance, it does not mandate that course of action. "[T]he Legislature routinely uses terms like 'shall' when it intends to give a mandatory direction." *In re R.S.*, 244 W. Va. 564, 571, 855 S.E.2d 355, 362 (2021); *see also* syl. pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). Conversely, when the word "may" is used, as it is in West Virginia Code § 6C-1-4(e), it "generally signifies permission and connotes discretion." *State v. Hedrick*, 204 W. Va. 547, 552, 514 S.E.2d 397, 402 (1999); *see also Weimer-Godwin v. Bd. of Educ. of Upshur Co.*, 179 W. Va. 423, 427, 369 S.E.2d 726, 730 (1988) ("The word 'may' generally should be read as conferring both permission and power, while the word 'shall' generally should be read as requiring action."). Therefore, we find that use of the word "may" in West Virginia Code § 6C-1-4(e) means that the filing of a grievance with respect to an alleged violation of the Whistle-blower Law is permissive and not mandatory.

13

Having determined that the filing of a grievance pursuant to West Virginia Code § 6C-1-4(e) is permissive, we necessarily find that an employee is not precluded by the exhaustion rule from instituting an action in the circuit court for an alleged violation of the Whistle-blower Law. "Where separate legislative enactments exist which provide separate . . . remedies, preclusive doctrines will not necessarily be applied." *Vest v. Bd. of Educ. of Cnty. of Nicholas*, 193 W. Va. 222, 228, 455 S.E.2d 781, 787 (1995) (internal quotations and citations omitted). As we have explained in that regard, "our cases require us to determine whether applying the doctrines [of preclusion] is consistent with the express or implied policy in the legislation[.]" *Id.* (internal quotations and citation omitted). The Whistle-blower Law evidences a clear public policy of encouraging public employees to come forward and report suspected violations of the law. To protect those employees who have suffered retaliatory action for doing so, the Legislature has provided a clear remedy–the filing of a civil action. Given the expressed public policy and the provision of a clear statutory remedy, the exhaustion of administrative remedies is not required before relief may be sought in the circuit court. Accordingly, we now hold that that the filing of a grievance with the West Virginia Public Employees Grievance Board for an alleged violation of the Whistle-blower Law is permissive and the failure to do so, does not preclude an employee from initiating an action in circuit court to enforce rights provided by West Virginia Code § 6C-1-3 (2020).[9] Thus, the circuit court has subject matter

---

[9] Mrs. Arbogast also asserted in count three that it was a violation of the Human Rights Act for Mr. Devono "to create bogus reasons to discharge [her] as punishment for [her] informing him of the wrongdoing of the [pre-K teacher.]" However, a whistle-blower

14

jurisdiction over Mrs. Arbogast's whistle-blower claim. The requested writ for count three of the amended complaint is, therefore, denied.

## C. *Constitutional claims*

In count four of the amended complaint, the Arbogasts allege that the petitioners "maliciously, willfully and in bad faith, wrongfully terminated Marlene Arbogast in retaliation for Plaintiff exercising her First Amendment Rights to free speech." Count five alleges that Mr. Devono "maliciously, willfully, and in bad faith created bogus reasons to discharge Marlene Arbogast as punishment because Plaintiff intended to exercise her Constitutional right to seek the advice of counsel and pursue legal remedies available to her" for the alleged mistreatment of her son. The petitioners contend that these claims were also subject to the grievance process and Mrs. Arbogast's failure to exhaust her administrative remedies required the circuit court to dismiss these counts pursuant to Rule 12(b)(1).

The petitioners maintain that counts four and five in the amended complaint were subject to the grievance process because they are simply *Harless*-type[10] wrongful

---

does not fall within the protected classes under the Human Rights Act. Thus, while Mrs. Arbogast may assert a cause of action under the Whistle-blower Law, she has no claim under the Human Rights Act for any retaliation she suffered as a result of reporting any wrongdoing by the pre-K teacher. *See Conaway*, 178 W. Va. at 166, 358 S.E.2d at 435, syl. pt. 3.

[10] *See* Syl., *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978) ("The rule that an employer has an absolute right to discharge an at will

15

discharge claims premised upon public policy manifested in the federal constitution. In other words, the petitioners contend that it does not matter that the Arbogasts have pointed to the United States Constitution as the source of public policies violated by Mrs. Arbogast's alleged discharge. They argue that a wrongful, retaliatory discharge claim—even when based upon a public policy manifested in the Constitution—must still be grieved and the grievance process must be exhausted before a civil action may be filed in circuit court. In support of their argument, the petitioners rely upon *Corbett v. Duerring*, 726 F.Supp.2d 648 (S.D. W. Va. 2010) (hereinafter "*Duerring I*"), a case in which the plaintiff claimed that he was wrongfully discharged from his employment as a vice principal for exercising his right to free speech. *Id.* at 651. Specifically, the plaintiff alleged that the defendant county board of education and superintendent "'negligently, wantonly, recklessly, willfully and/or maliciously terminated plaintiff's employment in retaliation for his exercise of his constitutional right to free speech and expression and his refusal to 'make deals' effecting [sic] the unequal treatment of students in Kanawha County schools.'" *Id.* The petitioners contend that the district court's dismissal of the plaintiff's wrongful termination and negligence claims in *Duerring I* because of his failure to exhaust administrative remedies establishes that Mrs. Arbogast was required to file a grievance with respect to her constitutional claims. Upon review, we find the petitioners' reliance upon *Duerring I* to be misplaced.

---

employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.").

16

In *Duerring I*, the plaintiff's complaint set forth three claims: wrongful termination in count one; negligent supervision in count two; and deprivation of constitutional rights under 42 U.S.C. § 1983[11] in count three based on his contention that he was fired for exercising his First Amendment right of free speech. 726 F.Supp.2d at 651. While the district court dismissed counts one and two under the exhaustion rule, count three was dismissed because the district court found that the plaintiff had failed to allege sufficient facts to support the elements of a First Amendment retaliation claim—not because the plaintiff had failed to file a grievance. 725 F.Supp.2d at 659. Notably, the complaint was dismissed without prejudice and, shortly thereafter, the plaintiff filed another complaint with the district court reasserting his First Amendment retaliation claim. The defendants then filed another motion to dismiss that was denied by the district court in

---

[11] 42 U.S.C. § 1983 (1996) provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

*Corbett v. Duerring*, 780 F.Supp.2d 486 (S.D. W. Va. 2011) (*Duerring II*), with a finding

that, this time, the plaintiff had sufficiently alleged a First Amendment retaliation claim.

*Id.* at 497.


As the district court observed in *Duerring II,* "[i]t is well-settled that a public

employer 'may not retaliate against a public employee who exercises her First Amendment

right to speak out on a matter of public concern.' *Love-Lane v. Martin*, 355 F.3d 766, 776

(4th Cir.2004) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573, 88 S.Ct. 1731, 20

L.Ed.2d 811 (1968))." 780 F.Supp.2d at 492. Indeed, this Court has long recognized that

> [a] public officer or public employee, even one who
> serves at the will and pleasure of the appointing authority, may
> not be discharged in retribution for the exercise of a
> constitutionally protected right, unless a substantial
> governmental interest outweighs the public officer's or public
> employee's interest in exercising such right. *See Connick v.
> Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d
> 708, 716-17 (1983); syl. pt. 2, *Woodruff v. Board of Trustees*,
> 173 W.Va. 604, 319 S.E.2d 372 (1984), and cases cited at 377;
> syl. pt. 3, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593
> (1983), cert. denied, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d
> 319 (1984).

*McClung v. Marion Cnty. Comm'n*, 178 W. Va. 444, 450, 360 S.E.2d 221, 227 (1987). As

this Court observed in syllabus point three of *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d

593 (1983),

> Under *Pickering v. Board of Education*, 391 U.S. 563,
> 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), public employees are
> entitled to be protected from firings, demotions and other
> adverse employment consequences resulting from the exercise
> of their free speech rights, as well as other First Amendment
> rights. However, *Pickering* recognized that the State, as an

18

employer, also has an interest in the efficient and orderly operation of its affairs that must be balanced with the public employees/ right to free speech, which is not absolute.

In *Orr,* a college librarian brought a 42 U.S.C. § 1983 action alleging that college administrators discharged her from her employment for exercising her free speech rights and criticizing their remodeling plans for a new library facility. This Court explained in *Orr* that "some general restrictions on the public employee's right to free speech were recognized in *Pickering*" and that the "speech to be protected must be made with regard to matters of public concern." 173 W.Va. at 343-44, 315 S.E.2d at 601-602. Upon review, it was determined that the plaintiff had engaged in protected speech and, therefore, the jury's verdict in her favor was upheld. In doing so, this Court formulated the following standard regarding the burden of proof for a First Amendment retaliation claim:

> In a suit under 42 U.S.C. § 1983, where the plaintiff claims that he was discharged for exercising his First Amendment right of free speech, the burden is initially upon the plaintiff to show: (1) that his conduct was constitutionally protected; and (2) that his conduct was a substantial or motivating factor for his discharge. His employer may defeat the claim by showing that the same decision would have been reached even in the absence of the protected conduct.

*Orr*, 173 W. Va. at 339, 315 S.E.2d at 596, syl. pt. 4.

Having carefully reviewed the amended complaint, we find that Mrs. Arbogast has asserted First Amendment retaliation claims in counts four and five of the amended complaint. In that regard, she has alleged that "as a mother and private citizen, [she] was concerned about the risk posed to students by the former Pre-K teacher and aid

19

and made statements regarding this matter of public concern." She further asserts that her "expression and statement as a private citizen and mother regarding this matter of substantial public concern outweighed any potential interests of the Defendants [petitioners herein] in providing effective and efficient services to the public." Finally, she contends that her conduct was a motivating factor in the termination of her employment.

Because Mrs. Arbogast has pled First Amendment retaliation claims, the circuit court did not err in denying the petitioners' motion to dismiss counts four and five pursuant to Rule 12(b)(1). As this Court has held, '[t]he circuit courts of West Virginia, being courts of general jurisdiction, have original jurisdiction to hear and resolve claims under Title 42, U.S.C.A. § 1983 (1979)." Syl. Pt. 3, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996). Accordingly, we deny the requested writ with regard to the constitutional claims asserted in counts four and five of the amended complaint.

### D. Tortious Inference with Medical Care claim

In count seven of the amended complaint, Mrs. Arbogast sets forth a claim that she characterizes as tortious inference with her medical care. Specifically, she alleges:

> Defendant Devono willfully, wantonly, maliciously and in bad faith sought information concerning Plaintiff's treatment and her medical records from Plaintiff's healthcare provider with the intent to harass, intimidate, degrade, and retaliate against Marlene Arbogast and to create bogus reasons for her discharge, in violation of the West Virginia Human Rights Act.
>
> . . . .

20

> Defendant Devono willfully, wantonly, maliciously and in bad faith intended to induce the disclosure of Plaintiff's medical care, knowing that the disclosure would violate Plaintiff's confidentiality and with the intent to obtain embarrassing information that he could use as harassment and a basis for termination in violation of the West Virginia Human Rights Act.

The petitioners again argue that Mrs. Arbogast has failed to set forth a claim under the Human Rights Act because she has not asserted that she is a member of a protected class. Further, the petitioners contend that the circuit court does not have subject matter jurisdiction for this claim because the allegations fall within the definition of "grievance" under West Virginia Code § 6C-2-2(i)(1), and therefore, the exhaustion rule bars the claim. We agree.

Mrs. Arbogast has not set forth a prima facie case under the Human Rights Act because she has not alleged that she is a member of a protected class. *See Conaway*, 178 W. Va. at 166, 358 S.E.2d at 425, syl. pt. 3. And, while she argues that this cause of action is not dependent on the existence of an employment relationship, she has specifically alleged in her amended complaint that Mr. Devono sought her medical information "to use as harassment and a basis for [her] termination." As set forth above, "grievance" is defined to include, inter alia, "any specifically identified incident of harassment" and "any action . . . constituting a substantial detriment to or interference with the effective job performance of the employee or the health and safety of the employee." W. Va. Code § 6C-2-2(i)(1). Given the specific allegations made in count seven, we find that Mrs. Arbogast was required to file a grievance with respect to this claim and her failure to do so bars this cause

21

of action.  Because this claim should have been dismissed by the circuit court pursuant to Rule 12(b)(1), we grant the requested writ with respect to count seven of the amended complaint.[12]  The writ is also granted with regard to Mr. Arbogast's derivative claim under this count.  *See Clawges*, 231 W. Va. at 310, 745 S.E.2d at 201.

## IV.  Conclusion

For the reasons set forth above, the requested writ of prohibition is granted with regard to counts one, two, and seven in the amended complaint, and denied with regard to counts three, four, and five.

Writ granted, in part, and denied in part.

---

[12] Having found that this claim should have been dismissed under Rule 12(b)(1), we need not address the petitioner's alternative argument under Rule 12(b)(6).

22